MURDOCK, Justice
(concurring specially).
In Ex parte McCree, 554 So.2d 336, 341 (Ala.1988), this Court held that the enhancement of a sentence under Ala.Code 1975, § 13A-5-6(a), did not apply to an offense “committed without the intentional use of a deadly weapon.” I believe there is merit in Asher Bragan Bole’s argument to this Court that the decision of the Court of Criminal Appeals in this case conflicts with the holding in McCree. Nonetheless, for the reasons discussed below, I concur in denying certiorari review.

Summary of the Facts and Procedural History

Bole was indicted on a charge of intentional murder in the shooting death of his friend, Andra Johnson. A jury convicted Bole of the lesser offense of reckless manslaughter, a violation of Ala.Code 1975, § 13A-6-3. He was sentenced as an habitual felony offender to 40 years’ imprisonment. On appeal to the Court of Criminal Appeals, Bole contended, among other things, that the trial court erred in imposing a firearm enhancement to his sentence under Ala.Code 1975, § 13A-5-6(a)(4), because Bole did not intend to shoot Johnson. The Court of Criminal Appeals affirmed Bole’s conviction and sentence. Bole v. State, 86 So.3d 1088 (Ala.Crim.App. 2011).
At trial, Bole admitted that he shot Johnson, but he claimed that the shooting *1099 was accidental. The facts before us disclose that on the day of the shooting Johnson and Bole drove Tiffany Smith from Center Point to Bessemer in Johnson’s vehicle. During the drive, Bole sat with a pistol in his lap in the backseat of Johnson’s vehicle. The evidence also shows that, after the vehicle stopped and Tiffany Smith got out of the vehicle, Bole attempted to move to the front passenger seat. While attempting this move, Bole had the pistol in his hand and “jokingly” feigned a robbery of Johnson. In the course of these actions, the gun discharged, killing Johnson. Bole testified that the discharge of the gun was accidental and that the gun fired when he attempted to stand and lost his balance. Smith testified that there were no harsh words between the two men in the vehicle and that they had made plans to go to a nightclub together after taking Smith home.

Application of the Firearm-Enhancement Statute

Section 13A-5-6(a)(4), Ala.Code 1975, provides: “For a Class A felony in which a firearm or deadly weapon was used or attempted to be used in the commission of the felony, ... [the sentence shall be] not less than 20 years.” Bole contends that the firearm-enhancement statute is not applicable because he did not act with intent in shooting Johnson.[1]
In McCree, this Court discussed the proper construction of the comparable firearm-enhancement provision in § 13A-5-6(a)(5):
“[T]he resolution of this issue requires a two-step process. First, implicit in the language of § 13A-5-6(a)(5) — ‘a firearm or deadly weapon was used or attempted to be used in the commission of the felony* — is the requirement that the underlying felony for which the defendant is convicted have, as one of its necessary elements, the element of intentional criminal conduct. Therefore, McCree’s reckless or negligent conduct, which resulted in manslaughter, while sufficient to supply the criminal scienter to support a conviction for a Class C felony, [2] does not require a finding that he intentionally used the firearm to commit the felony, and thus can not support the application of § 13A-5-6(a)(5). In other words, reading § 13A-5-6 as a whole, we must construe subsection (a)(5) to mean that convictions for those underlying felonies that are committed without the intentional use of a deadly weapon do not fall within the category of convictions that invoke the enhancement provision of this statute.
“Second, ‘enhancement,’ as that word is used to describe the effect of § 13A-5-6(a)(5), necessarily means that in addition to the culpability of the offense for which the defendant has been convicted, the defendant’s conduct is necessarily the result of a higher degree of culpabil *1100 ity, because of the jury’s finding that a ‘firearm or deadly weapon was used or attempted to be used in the commission of the felony.’ Indeed, the use of a deadly weapon to commit the underlying felony is the classic situation intended by the legislature to invoke the enhanced penalty.
“Here, the jury returned a verdict of manslaughter. By virtue of that finding, that McCree recklessly caused the death of his friend, the jury eliminated the element of McCree’s intentional use of a firearm as a means to take human life. The culpability of McCree for recklessness was established by the jury’s verdict. Otherwise, the guilty verdict would have reflected a higher degree of unlawful homicide. (Indeed, the indictment specifically charged McCree with manslaughter under § 13A-6-3(a)(l) and not with a higher degree of criminal culpability.) Therefore, the trial court was without authority to sentence McCree under an enhancement statute that, by its terms, is invoked only by a degree of culpability higher than that for which McCree had been found guilty.”
Ex parte McCree, 554 So.2d at 340-41 (footnote and some emphasis omitted; some emphasis added).
In the present case, the Court of Criminal Appeals quoted at length from McCree, but it concluded that a firearm enhancement is applicable in the present ease because the degree of recklessness here is higher than the degree of recklessness in McCree. Specifically, the Court of Criminal Appeals relied on its later case of Mays v. State, 607 So.2d 347 (Ala.Crim.App.1992), which held that the firearm-enhancement provision of § 13A-5-6(a)(4) was properly applied to a conviction for reckless manslaughter where the degree of recklessness “far surpasse[d]” the recklessness in McCree.
That is, the Court of Criminal Appeals held in Mays that, under the facts of that case, recklessness supplied the intent necessary for application of the firearm-enhancement provision. I find no support for that proposition in logic, in the language of the statute, or in the holding or rationale of this Court in McCree. In addition, of course, Mays itself involved a conviction for reckless manslaughter, not reckless murder, and therefore did not require a finding by the jury of anything more than “normal” recklessness.[3]
The Court of Criminal Appeals in the present case stated, in part:
“[I]n Ex parte McCree, the [Supreme] Court specifically noted that it need not determine in that case whether every manslaughter would require the same holding. The Court confined the ruling to the facts of that case. In Mays v. State, 607 So.2d 347 (Ala.Crim.App.1992), this court determined that the facts of that case distinguished it from Ex parte McCree, supra....
“In determining that the facts of Mays properly supported the application of the firearm-enhancement statute, this court stated:
“ ‘The degree of recklessness in the present case far surpasses that found in McCree. The commentary to § 13A-6-3, Code of Alabama 1975, defines “recklessly” as follows:
“ ‘ “[To act recklessly] means that a person [is] aware of and consciously disregard[s] ‘a substantial and unjustifiable risk’ that death will occur. ...”
*1101 “ ‘Here, the appellant was aware of placing the deceased victim at the risk of death and consciously and grossly disregarded that risk. This case exemplifies the reason the Alabama Supreme Court limited McCree to its facts. McCree recognizes that there may be other situations where the enhancement provision should be used in reckless manslaughter cases. We hold that in this case there did exist the intent envisioned by the legislature to apply the enhancement provision for the intentional use of a firearm. No error occurred here.’
“Mays v. State, 607 So.2d at 349.
“In the present case, Bole was aware of the danger of the use of the gun, and he knew that it was loaded. He pointed the gun directly at the victim and made a threat, whether ‘jokingly’ (R. 97-99) or not. He then threatened a witness. These facts are more akin to those in Mays; therefore the application of the firearm-enhancement statute was proper in this case.”
Bole, 86 So.3d at 1097-98 (emphasis added).
First, as to the passage from Mays quoted by the Court of Criminal Appeals, I am at a loss as to how the Mays court could equate “recklessness” and “intent” in that case for the purpose of establishing a basis for the application of the firearm-enhancement statute. It is true that under AIa.Code 1975, § 13A-6-2(a)(2), a person commits murder (sometimes referred to as “reckless murder”) when “[u]nder circumstances manifesting extreme indifference to human life, he or she recklessly engages in conduct which creates a grave risk of death to a person other than himself or herself, and thereby causes the death of another person.” (Emphasis added.) In Ex parte Weems, 463 So.2d 170, 172 (Ala.1984), this Court explained that reckless murder involves conduct that cannot be fairly distinguished from intentional conduct (or that is tantamount to intentional conduct). In Mays, however, the defendant was convicted not of reckless murder, but only of reckless manslaughter under 13A-6-3(a)(l), an offense that does not have as an element intent or “extreme indifference to human life.”
Second, in reaching its conclusion, the Court of Criminal Appeals noted (1) that Bole knew that the gun was loaded, (2) that he was aware of the danger of a loaded gun, (3) that he pointed the gun at the victim, and (4) that he made a threat, “ ‘jokingly’ ... or not.” Even under the factual-comparison approach apparently employed by the Gourt of Criminal Appeals in Mays and in the present case, I question whether the culpability proven in the present case is sufficiently comparable to the culpability of the defendant in Mays and, indeed, whether the scienter fairly can be said to be tantamount to the intent that clearly is necessary as a basis for application of the firearm-enhancement statute. There is no evidence of animus between Bole and Johnson, and, for all that appears in the facts before us, Bole’s “threat” to Johnson was indeed made “jokingly.”
The decision in the present case appears to conflict squarely with the holding in McCree. McCree clearly held that the firearm enhancement applies only if the “underlying felony for which the defendant is convicted [has], as one of its necessary elements, the element of intentional criminal conduct.” McCree, 554 So.2d at 340. In McCree, this Court rejected an argument that the only requirement was that a firearm be used in the commission of the offense, and it held that, under the facts of that case, the firearm-enhancement provision did not apply to a conviction for reckless manslaughter when the victim was shot accidentally.
Under the holding in McCree, a firearm enhancement would not appear to apply in *1102 the present case because Bole was convicted of reckless manslaughter, an offense that does not have intentional conduct as one of its elements. Indeed, the jury acquitted Bole of intentional murder and convicted him of the lesser-included offense of reckless manslaughter, thus necessarily finding that Bole did not act with the intent requisite to support a conviction for murder. Accordingly, the firearm-enhancement provision is not applicable in the present case. See Railey v. State, 710 So.2d 477 (Ala.Crim.App.1996) (holding that reckless-manslaughter conviction did not warrant application of the firearm-enhancement statute because the defendant’s conduct was reckless, rather than intentional); Ward v. State, 689 So.2d 218 (Ala. Crim.App.1996) (holding that firearm-enhancement statute was not applicable where the jury was charged regarding reckless manslaughter and heat-of-passion manslaughter and the guilty verdict did not distinguish between the two offenses); Avery v. State, 603 So.2d 1123, 1124 (Ala.Crim.App.1992) (holding that firearm-enhancement statute did not apply to sentence imposed on conviction for reckless manslaughter and noting that, “by finding the appellant guilty of reckless manslaughter, the jury acquitted the appellant of intentional murder and ‘eliminated the element of [his] intentional use of a firearm as a means to take human life ’ ”); and Jenkins v. State, 640 So.2d 1053 (Ala.Crim.App.1993) (noting that, upon conviction for second-degree assault, firearm-enhancement statute could not be applied where the jury verdict failed to specify whether defendant’s conduct was intentional or reckless). Even if the Court of Criminal Appeals is correct in its determination that the degree of Bole’s recklessness was greater than the recklessness in McCree, the jury necessarily found that Bole’s conduct did not rise to the level of intentional conduct.
Ultimately, the Court of Criminal Appeals’ decision in the present case — and the decision in Mays upon which it relies— may simply misapprehend this Court’s caveat in McCree that it did not decide in that case “[wjhether every manslaughter conviction would require the same holding as here.” McCree, 554 So.2d at 341. This caveat does not (as the opinion in Mays suggests) refer to reckless manslaughter, but only to manslaughter,[4] The caveat cannot be read to contradict the clear holding of McCree that the enhancement applies only to underlying felonies in which intentional conduct is an element.
More importantly, I believe it is critical that we reject the notion that McCree intended to establish some sort of sliding scale (ranging from “normal” recklessness, on one end, to the “extreme indifference” form of recklessness tantamount to intent, on the other end) with a contemplation that courts in future cases must perform the task of deciding whether the defendant’s conduct somehow falls close enough to the upper end of the scale to warrant application of the firearm-enhancement statute. I fail to see any principled distinction among various degrees or levels of recklessness, so long as the recklessness is not so extreme as to be tantamount to *1103 intentional conduct (such as would support a conviction for reckless murder under Ala.Code 1975, § 13A-6-2(a)(2)). See Ex parte Weems, 463 So.2d 170, 172 (Ala.1984) (noting that reckless murder involves conduct that cannot be fairly distinguished from intentional conduct).
In other words, I do not understand how we could accept a criminal statutory scheme that does not delineate more categorically what types of offenses are subject to enhancement when a firearm is used in their commission. A case-by-case comparison by every trial court of how closely the scienter in the case before it compares with the scienter in previous cases is hardly compatible with the clarity required of criminal statutes. See generally Carroll v. State, 599 So.2d 1253, 1266 (Ala.Crim.App.1992), aff'd, 627 So.2d 874 (Ala.1993) (“[Cjriminal statutes must be construed so as to give fair warning of the nature of the conduct proscribed and not broadened by judicial interpretation....”); Kolender v. Lawson, 461 U.S. 352, 357, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983) (noting that, in order to pass constitutional muster, a penal statute must “define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement”); and Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) (holding that any fact that increases a punishment above the statutory maximum must be presented to a jury and proven beyond a reasonable doubt).[5]
Notwithstanding the foregoing, I vote with the other members of this Court today to deny certiorari review of the Court of Criminal Appeals’ decision as it relates to the firearm-enhancement issue. I do so because Bole has not presented in his petition to this Court an adequate argument as to how he was prejudiced by the application of the firearm-enhancement provision. Bole was sentenced to 40 years’ imprisonment, a term that is greater than either the minimum 10-year sentence that would have been applicable without the firearm enhancement or the minimum 20-year sentence applicable under the firearm-enhancement statute. Conceivably, Bole was prejudiced in that the trial court’s decision-making process was based upon or influenced by incorrect sentencing parameters. Bole’s petition to this Court, however, does not present to us any argument in this regard. It is not this Court’s duty to craft arguments or to conduct research for a party. McLemore v. Fleming, 604 So.2d 353, 353 (Ala.1992).

. The manslaughter offense of which Bole was convicted actually is a Class B felony, but, because Bole had one prior felony conviction, he was sentenced as if his offense were a Class A felony. Ala.Code 1975, § 13A-5-9(a)(2). Bole’s petition to this Court assumes that, if firearm enhancement under § 13A-5-6(a) is required, it would be the enhancement provided in subsection (a)(4) rather than the enhancement provided in subsection (a)(5), the latter of which is applicable to Class B felonies.
The range of sentences for a Class A felony without the firearm enhancement prescribed by § 13A-5-6(a)(4) is 10 years’ to 99 years’ imprisonment or life imprisonment; if the firearm enhancement of § 13A-5-6(a)(4) applies, the range of sentences is 20 years' to 99 years' imprisonment or life imprisonment.

. At the time McCree committed his offense in 1985, manslaughter was a Class C felony. Section 13A-6-3(b) was amended, effective August 12, 1987, to provide that manslaughter is a Class B felony.

. Compare Ala.Code 1975, § 13A-6-2(a)(2), requiring a finding of recklessness of a degree "manifesting extreme indifference to human life” as a basis for conviction for "reckless murder.”

. The court in Mays stated that "the court in McCree concluded its opinion by saying its holding was not applicable to every reckless manslaughter case, but only to McCree and its specific facts.” Mays, 607 So.2d at 348-49 (emphasis added). The portion of McCree to which this statement refers does not refer to "reckless manslaughter” but only to "manslaughter.” This caveat can be explained as a possible reference to provocation manslaughter under § 13A-6-3(a)(2), which involves a homicide under circumstances that would constitute murder (i.e., intentional conduct) but the murder is mitigated because it occurs under a sudden heat of passion by a provocation recognized by law. Such an offense could involve the intentional use of a firearm.

. Even assuming that the scienter-comparison approach suggested by Mays were the law, the facts of this case and those of McCree are similar. In both cases, the defendant had a loaded pistol in his hands and the defendant did not intend to shoot the victim, or anyone else, but the pistol accidentally fired. Despite the joking threat to the victim in the present case, there was no evidence in the present case indicating that Bole intended to shoot the victim, and the jury acquitted him of the intentional crime of murder.